Case number 16-5103 Mark Mayhew v. Town of Smyrna, TN et al. Oral argument not to exceed 15 minutes per side. Mr. Douglas Janney for the appellant. You may proceed. Good morning. Good morning, your honors. May it please the court, my name is Doug Janney and I represent the appellant Mark Mayhew. I would like to reserve four minutes for rebuttal. Very well. We respectfully request that the court reverse the judgment of the district court granting the defendant's motion for summary judgment and hold that Mr. Mayhew engaged in constitutionally protected speech activity in this case, at least that part of his speech was constitutionally protected, if not all of it. Mr. Mayhew worked for the wastewater treatment plant at the town of Smyrna for nearly 19 years. It's undisputed that he was an excellent employee. He had no prior disciplinary action, write-ups or anything of that nature before July of 2014. Your honors, Mr. Mayhew engaged in constitutionally protected speech activity on three occasions approximately. The first time was in mid-June 2014 when he reported to the utilities directors who were outside of the plant. They did not work at the wastewater treatment plant. The head person on the ground at the wastewater treatment plant was the plant manager. Mr. Mayhew went outside of the plant to Mr. Strange and Mr. Parker, the utilities directors, who had responsibility over multiple departments. In the context of special investigations that they were conducting at the plant, interviews that they were conducting about various employee problems at the plant, Mr. Mayhew reported that Leland Noble, another employee at the plant, had pressured him to change numbers or alter data on dewatering reports and other reports that the plant had to submit to the Tennessee Department of... Is it your client's duty not to change the reports or change the figures? I mean, that's part of his duty is to report them accurately? Your honor, yes. It was part of his duty to report those things accurately to TDEC and to the EPA, but what was not part of his duties was going and reporting the fact that Noble was pressuring him to these external... Your honor, the appellees rely on this job description, this lengthy job description. That's not in there and... Okay, answer my question. I mean, a job description will try to list as many things as they can think of, but I would think reporting misconduct of fellow employees is part of the scope of your employment. I would assume it is. I would expect my employees to report misconduct of fellow employees, even if I don't have that in their job description. Yes, sir, your honor. He did have a duty to report it to the plant manager, to Mike Roberts. All right, well, you're saying he reported too high. He's still reporting within the town, the town hierarchy. Maybe he skips a step or two, but he never gets out of the officials of the town that he works for. He didn't have a chance to. Well, he never did, though, did he? No. And that's the main problem I have with your case, is that all the complaints were internal within the municipality. And whether it's two things up the chain of command or one thing at the chain of command, he never gets out of the municipality with his complaints of anything. And most of these cases that we see, which are First Amendment-protected cases, they get out of the government agency and report it to other people, news media, or somebody else. But here, there isn't anything like that. Your honor, may I address that? Sure. Mr. Mayhew did report outside of his department, and there's a case handling that. Still to the town officials. Yes, your honor. But there's a case, Handy Clay v. City of Memphis, that said that the plaintiff's reports that were outside of her department were entitled to constitutional protection because they were outside of her department. I'll take a close look at it. Is it a Sixth Circuit case? Yes, it is, your honor. It's Handy Clay v. City of Memphis. Published case? Yes, it is. I'll take a look at it. I wouldn't think that that would apply, but I'll look at it. I think that's a very narrow reading of the Supreme Court opinions, that if you go out of written job descriptions, here's your job description, there's ten things, but there's something else, such as reporting misconduct of a fellow employee. Well, that's not in the job description, therefore it's protected speech. It's not within the scope of your employment. I don't think that's what the Supreme Court has said, in Garcetti, anyway. Your honor, with regard to the reporting outside of the department, in some cases the employee is simply not going to get the chance to go outside of the department. Here, Mark Parker, the assistant utilities director, admonished Mr. Mayhew not to take it beyond him, not to report it to the town attorney, Jeff Peach, whom Mr. Mayhew wanted to report it, and not to report it to Gil. Also to the EPA or the Tennessee EPA. Those are the more classic cases that I have of protected speech, not internal reporting, that's all. I'm kind of interrupting you. You've got three examples of protected speech. The first one is a report to the utility director as to Mr. Noble's attempts to falsify the samples, and the other two are what? The July 1, 2014, email that Mr. Mayhew sent on a Sunday outside of work He sent that one to who? He sent it to Mike Strange and Mark Parker, the utilities director and the assistant utilities director, and requested in the email that it be forwarded to the HR manager, Jeff Craig. Then in the July 7, 2014, meeting outside of the plant at City Hall with a number of individuals that were out of the chain of command, including the town attorney, I think that's the most significant, Jeff Peach, the human resources director, Jeff Craig, and then Mr. Gil, the town manager, and Mr. Strange, the utilities director. So there were five of them in this meeting. They go over all of Mayhew's concerns that he had reported to Strange and Parker previously in the special investigations and previously in the July 1 email. In that email, you have in addition to the reports of violations by Mr. Noble and pressuring him to change numbers, you have him speaking about violations of town hiring policy and practice and the appointment of unqualified individuals in the two highest positions at the plant, safety-sensitive positions. Judge Gilman was on the panel in the Banks v. Wolfe County case that we rely heavily on in our briefs, talking about mixed speech. You have to look at the words the plaintiff used, in this case in Mr. Mayhew's email, and in that July 7 meeting, look at the words that he used, not his intent or his motivation. The district court focused on his motivation. It comes down to whether his speech is as an employee of the town or whether his speech is as a private citizen divorced from his employment. To me, all these matters appear to be employment-related matters, and he's complaining to town officials about employment matters, whether it's the hiring practices or if it's Mr. Noble's attempts to falsify the samples. It seems like it's all employment-related rather as speech by an employee, not as speech by a private citizen. Tell me how this is speech by a private citizen. Yes, Your Honor. In Lane v. Franks, the Supreme Court modified that standard slightly. Your Honor mentioned that it's related to employment. We'll concede it's related to employment. It owes its existence to employment, but what the Lane court said is if it's outside of the ordinary scope of the employee's duties, and the district court in this case found that Mr. Mayhew's reports about the hiring policy violations and the appointment of unqualified individuals was as a citizen. But then the court determined that that had not been pled as a claim. Give us your best explanation for why, in fact, that had been pled. Your Honor, it had been pled. In paragraphs 10 through 29 of the complaint, we went through in great detail all the violations of the hiring policy, Mr. Mayhew's protesting of them, and said that he got fired for reporting illegal activity, that of Noble, and speaking out on matters of public concern, this stuff that was held to be matters of public concern in the bank's case. That is, favoritism and nepotism in hiring, appointing unqualified individuals to the two highest positions at the plant, and individuals who lack the required... Does your complaint actually state that the nepotism charge was part of your first violation of your client's First Amendment rights? It does, Your Honor. There's a conclusory sentence at the bottom of all these allegations that says that he engaged in constitutionally protected speech activity and was fired for doing so. And there's a case I'd like to cite, Your Honors, to... Did he say that in his deposition too? Because I thought he was asked in his deposition several times, now what do you claim caused this town to fire you? And I don't think he said the complaint about the hiring practice. I can read his deposition again, but I think about three times he said no, and it was the complaint regarding Noble. And he was asked specifically, tell us what caused the firing. Am I wrong on that or not? He mentioned both, Your Honor, but more importantly... In his deposition he did, as to the causation? He did, he did. Okay, tell me more in his deposition he said that, because... I can, when I sit down, I can pull it out of the brief. I don't have the cite on the top of my head, but he mentioned both activities. And more importantly, Your Honor... As to causation? Yes. And more importantly, Your Honor, the defendants concede that they fired him because of what he said in the July 1 email and in the July 7 meeting. So Mr. Mayhew is not really the one in a position to know why they fired him. They're the ones that are in... He's in the position, though, of stating his cause of action in his complaint, and that's kind of what we go back to. And he has to say that I engaged in protected speech, and the town opposed my protected speech by firing me because of it. And so, I mean, you have to allege in the complaint, and then you also have to back it up with facts in the record. And I'm trying to find where he was specifically asked to ask the cause of it. Your Honor, may I mention one case to Your Honors that goes to this complaint issue? Sure, go ahead. Yes, it's Wysong v. Dow Company, 503 F. 3rd 441 at page 446. It was an FMLA case where the defendant tried to say the plaintiff didn't plead both interference and retaliation theories, and the court said no. At the notice pleading, the claim is violation of the FMLA, and that's all you have to say here. The claim is the defendant's violated Mr. Mayhew's Section 1983 First Amendment rights to speak on matters of public concern. And in all the depositions and everything in this case, we went through exhaustively all this stuff about, okay, you posted all these positions before. This time you didn't post them at all. You didn't let anybody interview.  both inside the plant and outside the plant, and you're not letting anybody apply like every other time that has ever been done in the history of the town of Smyrna. So he's speaking out about these. And if you read the July 1 email, those are matters in which the public would be interested. And qualified job applicants for these two positions, these two highest positions at the plant, would certainly be interested in Mr. Gill's conduct in bypassing all of this and appointing his nephew and another person who had all kinds of write-ups and had engaged in misconduct and had been complained about by numerous employees and just summarily appointing these people to these positions. This has been a part of the case the whole time. It was in all the written discovery, a telephone conference call with the court when we made them produce their job postings. That stuff is only related to this claim about the appointment of people to the positions, not about the illegal activity of Noble. And so under Banks, this is at least a mixed speech case. And if you read the July 1 email for which Mr. Mayhew got fired, part of that touched on matters of public concern that the community would be interested in. Any further questions? Judge Scratch? No. All right, we'll have you rebuttal. Good morning. Robert Burns at the Nashville Bar on behalf of the town of Smyrna and Mr. Gill. The first point that I'd like to make for the court, and I acknowledge it's not fully dispositive on the character of the speech in this case, but given the admittedly hotly contested case and the emotions that came out certainly before the litigation got filed, is that I think it is significant and it's noteworthy and important, at least in terms of looking at the focus of this case, is that there was no evidence of misconduct that was ever actually produced or found by Mr. Noble. Now, again, I recognize and acknowledge misconduct. In which of the two claims? On the illegal or the altering of the data. That's what I'm referring to. And also to back up a little bit with the focus, Mr. Janey mentioned and tried to put the focus of this case on and asserted to the court that the first complaint was made in June of 2014 at what he characterized as his special investigation. Point in fact, Your Honors, the record is undisputed that Mr. Mayhew first went to Mr. Roberts, the former plant supervisor, to bring this to his attention in March of 2014. And Roberts, of course, is the man that has to sign those reports that go to TDEC and go to the EPA. And he looked into it. And in a deposition that I took of him, I asked him what he did, what he found. And he said that he investigated it. He looked at the data. He got onto the computer. He looked at these logs where the district court found that the only evidence of any altering of numbers was this discrepancy. And Mr. Roberts testified that he couldn't find anything. He specifically said that I I'm wondering if that's the gravamen of the case, because there's no question that Noble had issues with his own management and his own activities. So talk to me more about I would like to hear more about this nepotism and promotion claim. Okay. Well, Judge, I acknowledge that that is not the gravamen of the case. But, again, I think that it is helpful and is beneficial because what this case reduced down to its core, I think, clearly, is the classic employee beef, the classic workplace disagreement between two men that had worked together for a very long period of time and probably should not have, admittedly, because of the personality disagreements. That's the question that we're talking about. An understandable and fair statement about what may be going on. But the real question here is the conduct of Gill and whether that impacted First Amendment rights. So I think you've got to concede, don't you, correct me if I'm wrong, that Banks pretty clearly says that nepotism and improper promotional activities is a matter of public concern. I'm not 100% sure that under the facts of this case that what we have is a claim of nepotism. That, per se, has not been alleged, I don't think. You don't think there was an allegation that he moved somebody up that they didn't want and placed his own nephew in that position without following any of the normal procedures that Smyrna had followed in hiring people? I will concede that what Mr. Gill did in terms of the methodology and how the promotions took place was outside what had been done in the past. Whether that touches on an issue of public concern under the facts of this case, I disagree. Classically, it's my understanding of this Court's interpretation of the law in the Sixth Circuit that I just don't think that there is enough here to move this into an issue of public concern. There's no issue, there's no allegation of public funds that were misused. There was no proof put into the record. How do you distinguish Banks? Well, to begin with, in Banks, as I recall, there was much more in the way of reporting and complaints that were made by the plaintiff in Banks as compared to what we have in this case. Well, it's not quantum of complaints that governs a breach of the First Amendment. It's whether there was responsive action based on speech. So I think there's a general agreement that the July 1 email was the motivating factor for the July 7 meeting. It certainly was. So we've got the two. And that Mr. Gill has admitted that he was angry about being accused of unethical hiring practices or unethical actions. So I think we've got the tie there. I think the only question that the court decided that nepotism claim on was a determination that it had not been pled. Not that it was not a matter of public concern, but that it had not been pled as an alternative. I'm just a little concerned about the basis of your argument that he didn't plead it alternatively and Rule 8D requires that. I don't see that in Rule 8D. Well, Your Honor, again, I guess a question of law or a matter of law for this court to decide whether it was pled or not. Obviously, you can interpret and review the complaint as well as the doc at the scheduling order, et cetera, as well as Judge Trauger can. My interpretation is that it wasn't pled. And while the issue of the relationship between the two Gills, if you will, was referred to, it was not the thrust or a focus or a specifically pled allegation. If that had been interpreted as such, in my answer, I would have included a defense that that, or my interpretation of the law of this circuit, is not a matter of public concern. Now, obviously... My concern about that is that the evidence in the record is that this was a claim that was actually litigated. The complaint clearly states it. It clearly states that there was a violation of normal hiring protocol in complaint paragraphs 10 to 14. But my look at the record, I'm a little bit of a loss for the argument because it's in the case management order. It's in the summary judgment brief. It was a fight in discovery. And you were ordered to provide the information regarding that issue. And in all six depositions, promotions accounted for a large amount of this discovery. In Mr. Gill's deposition alone, by my count, there were 60 pages of testimony taken about promotions, the town's policies regarding job postings, applications, qualifications, and interviews. The handbook was introduced into the record, the code of ethics. I don't understand how, under our case law, when there is a notice pleading that includes the allegation, and then it is litigated throughout, how one can claim that the claim was not raised. What is your best authority in that circumstance for saying that the claim was not raised? I would have to rely upon, Your Honor, what we have in our brief in respect to the appeal and also the briefs that were followed in relation to the SIR reply and what was a motion to strike, which retrospectively was not the proper vehicle to address that issue with the court. Let me ask you this. Are you familiar with a 2014 Supreme Court case titled Johnson v. City of Shelby, Mississippi? Off the top of my head, Your Honor. No, I'm not. It's a pure curiam reversal of the Fifth Circuit and the district court below where there were police officers who were investigating criminal charges against one of the aldermen of the city. In response, they were fired by the Board of Aldermen. The question was, was it a matter of public concern? But the real problem was that the complaint didn't mention Section 1983. So the district court and the Court of Appeals said, hey, out the window, not properly pled. The Supreme Court summarily reversed unanimously per curiam. They make statements, a couple of them, that says, under the Federal Rule 8A2, they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. It says that the Federal Rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief. So, you know, is this similar here? Well, he doesn't specifically say in the complaint that this nepotism is part of my First Amendment claim, because if the complaint talks about the nepotism issue and it's been disposed, they don't have to state specifically a legal theory. So, I mean, I don't know. I'm concerned. I don't want to be summarily reversed. I don't either on this one, Your Honor. Your Honor, or all of you, I would point, because I'm looking at the district court's memorandum opinion on page 22, carrying over to the top of page 23, and I interpreted Judge Trauger's finding and ruling that Mayhew's, Mr. Mayhew's statements about the promotions to be a separate basis for a claim of retaliation, I read that to mean that Judge Trauger found that they were not actionable under the First Amendment. She went on to say that even if the speech is related to Mayhew's concerns about his ability to perform job duties rather than a matter of public concern, and then she went on to cite two cases, one, Ruer v. City of Stowe from the Sixth Circuit, quoting Farhight, and then Connick v. Myers, which was referred to earlier. Respectfully, I would simply submit that the focus of this claim from, I think, the beginning and throughout litigation, was the focus on what Mr. Noble did or did not do with respect to this information. The hiring, while it is acknowledged, was not what had been done in the past. I still question whether it touches on a public concern. It did not violate any federal state regulation. It actually didn't violate any internal policy, written policy, of the city or the town of Smyrna, and it's undisputed in the record that the town manager had the final authority to hire or fire, and he could do that within his discretion. And Mr. Gill, while there was questioning about this, Mr. Gill, I think, pretty aptly stated that the reason he went about the hiring and promotion decision in the way that he did, one, for his nephew, Mr. Gill, was not because of the relationship, the family relationship, but because he was the next logical person to fill the position. But isn't the problem in a First Amendment case not whether your claim that you are addressing is proven ultimately to be true, but whether, in fact, you were treated in an improper way because you made the claim? I think, as a general, I might have to write that down to study on it a little bit, Your Honor. The bottom line is you can speak what you believe to be true, and it may in the end not be exactly true, but you can't be punished for having said it. That has been addressed in prior decisions. And so the key here is whether Mr. Gill acted inappropriately based on a July 1 email that was the majority of which addressed nepotism and improper hiring practices, and his testimony supports a claim that there was a discharge based on the fact that he was angry about being accused of unethical hiring and promotion practices. That's pretty clear. Respectfully, I would not agree with that. I don't agree with the characterization. I see why you would have to not. Certainly. I wouldn't agree with the characterization of the email. No, but, you know, I'm quoted there as, quote, he was furious and, quote, offended that Mayhew was questioning his ethics with respect to whom he hired. That's right in the record. He did say that, but it didn't go with respect to the fact that he hired his nephew. His nephew was qualified. His nephew had been in the position of chief or lead operator for 8, 9, or 10 years, and Mr. Gill, I think, testified and explained very well that he thought that this was the best decision to make under the circumstances. And while he acknowledged that in the past the town had employed these practices under these circumstances in order to kind of quiet down and to get a handle on the controversies, and I want to make this point, Mr. Janey, respectfully, I think mischaracterized why it was that this, quote, unquote, special investigation started. I don't know that I would characterize it as that, and this was not kicked off because of Mayhew's complaints. This was kicked off because, and the investigation started, Mr. Gill told Strange and Parker and the utility department to go down to the utility, or to go down to the wastewater treatment plant because there was a lot of dissension and argument among the employees that was going on. And that had been highlighted and brought to his attention because of Mr. Roberts' suspension for having alcohol on the job. And sort of, I hate to say it as an afterthought, but it came out of those interviews that Mr. Mayhew made the comment, made the report to Mr. Parker about the alleged illegal activity and number fixing. And again, I go back to the original March report to Mr. Roberts. That's when it started in terms of context, and in chain of command did not go outside of town on that issue. Mr. Burns, in regard to the complaints about not going through the normal hiring practice, which is what we're focusing on mainly for the questions here, the district judge ruled it wasn't pled, and then he also ruled, even if it were pled, that it was not a matter of public concern. The other element, I guess, that there wasn't a ruling on is whether the speech by the plaintiff was as a private citizen or as a public employee, which I think is probably the dispositive question. My question is, okay, the district judge did not rule that, but we nevertheless may affirm for the right result but the wrong reason. However, we only do that if the issue is preserved. Did you argue below, and have you argued on appeal, that the speech by the plaintiff regarding the hiring practice was not as a private citizen but as an employee, which I think is a necessary element? Have you argued that? Yes, I believe we have. Both district court and on appeal? Well, I'm embarrassed to say that I did not read in preparation, or I read in preparation several days ago, all of the briefs that have been filed, but I believe that that argument is there. I acknowledge and recognize the issue that Your Honor, Judge Griffin, is pointing out, but in answer to your question, yes. You think you preserved it? Yes, yes, yes. I don't see you raising it in the statement of issues here, but I'll have to read your brief again to see if it's actually in there. I mean, you make a lot of arguments to affirm the district court, but I'll see that. Help me understand that argument, because the question that I understood was at issue was whether this is a matter of public concern falling into the case law following Lane v. Franks that talked about the fact that there could be mixed speech. If your argument is that complaining about hiring is a part of one's job responsibilities, then no employee could ever raise that as a matter of public concern, and we have case law that allows an employee to raise that as a matter of public concern. So how do you differentiate our case law? Well, Your Honor, I'm not sure that Lane v. Franks stands for the proposition that Mr. Mayhew wants it to stand for. I didn't read Lane to be a case that changed standards for every circuit court in the United States, that instead of this being a question of law for a district court to decide, as Judge Trauger did, that it is now a question of law and fact, or a mixed question of law and fact. I don't think you have any disagreement with that. I think your argument is fine. I'm talking about the very issue of whether an employee may complain about nepotism and improper hiring practices, and I'm asking you, doesn't our bank's decision establish that an employee may speak as a private citizen on that issue and not have it treated as a part of one's job responsibilities? It speaks to the issue, but I don't think banks is controlling here because the facts are distinguishable. If I recall banks, there were numerous communications, and I think banks involved a report and a claim that funds were being misused in the context of what was being done in that case. We don't have any of that here. We have a disgruntled employee who, if I may say, simply got angry because a man that he didn't like, despised, quite honestly, had been promoted into a position that he was qualified to get into. He had the experience. He's done a good job.  He didn't have a college degree. Well, he had three and a half years of college experience and a long period of time of service in the United States. Close, but no cigar. Well, you know, these requirements, though, as I read the job descriptions, are not mandatory. And, again, I go back to – They told Mr. Mayhew that he couldn't have the job because he didn't have a degree. That sounds – Well, that was under a different administration, Your Honor, and a different hand administrator at the time. What happens in this case if we decide that the complaints regarding Noble were part of the plaintiff's employment and, therefore, not First Amendment-protected speech, however, the plaintiff's complaints regarding the hiring practice is not within the scope of his employment and, therefore, it is as a private citizen? So we affirm in part and reverse in part. How does that work on remand? Would all this come out at trial anyway because it's part of the scenario of it and the jury would be instructed, but you may not consider whether the firing was partly caused by this or that? I mean, how would that work? Well, I think it would be messy, if not a nightmare, for Mr. Janey and I, potentially, if we had to go back and try this case. That is a possibility that one of the claims might survive and the other one doesn't. I mean, is it possible to litigate it that way? If this court orders that and if I don't have a basis to challenge that further, I guess we go back to the district court and we look at what's left. Did the plaintiff say in his deposition that he was fired because of his complaints of the hiring practice? I don't recall. That was talked about, but I don't recall that. Did you ask him? I think that I did. I mean, he referred a lot to the email. That was his default answer. Okay, but the email's got both of them in it, doesn't it? It does, but I think if you look at the way that the email was analyzed and the way the district court analyzed it, Judge Strauger used the point and used the terminology that the communicative purpose was focused on noble and the alleged illegal activity. Again, I go back to the comment that I made that this is one of these classic cases, and I think we're opening up the court to having to go down a slippery slope, Your Honor, respectfully, Judge Strange, that if every time someone complains about a promotion or a hiring decision in the context of this case, and I don't agree that this is a matter of public concern, then we open the courts to a floodgate of potential litigation that any time someone applies for a position or his buddy gets promoted and he doesn't know about it or there's some other extenuating circumstance, then we have a First Amendment claim. Well, only if the employee like here gets fired. Well, potentially. Because the boss doesn't like him complaining about his hiring. Well, you know, Judge, I could see scenarios, though, where somebody tries to spin up some type of claim of disparate impact or an adverse action that was taken upon him as a result that... Well, that's the nature of First Amendment law. It is. You can handle it. You handled it before. So the question here is, as Judge Gilman says, when you have a case where the testimony from the discharging entity is that I was upset because he believed plaintiff had accused him of nepotism, is there then a connection to the expression of a public concern and the firing? It's a pretty simple question. Courts handle that stuff all the time, don't they? Well, they do, and respectfully, I disagree. The one thing that I may suggest, since this has come up and there have been many questions to both me and to Mr. Janey, I would invite if you perceive a need for additional briefing on any of these issues, I would be open to that if there are things that need to be clarified. I'd prefer not to, honestly. I think that this decision should be affirmed. I thought it was clean enough and clear enough from the district court, and the basis there is to affirm. Any further questions, Judge Gilman? Thank you, Mr. Burns. Mr. Buddle? Thank you, Your Honors. I would like to address the issue of whether this claim, the defense counsel was referring to the issue about the hiring and the promotions and the nepotism as a claim. That is not the claim. That is part of the grounds upon which the claim rests. The claim is that they violated his First Amendment rights by firing him for sending an email complaining about matters of public concern. Judge Griffin, one question that Your Honor raised was whether he was speaking as a citizen when he did that, and the district court correctly found that in complaining about the hiring policy violations and the appointments of unqualified individuals, that that was outside of the scope of his employment, and he did so as a citizen. Well, I wasn't quite sure. I read that, and it was almost like assuming that it was outside. The court finds, one, that it wasn't pled, and, two, it wasn't a matter of public concern. I don't know if there's really a ruling on it. The way he wrote it was. Your Honor, Judge Trauger did say that I believe that that was speech as a citizen, and that's the only logical conclusion on speaking as a citizen. He's complaining of hiring practice within the town to town officials, and so he, as an employee, he's complaining that other employees are improperly getting jobs in front of him within the organization. To me, that looks like employee speech, not private citizen speech, because, and actually his email is sent to the town official. So is he acting as an employee when he sends the email to town officials, or is he acting as a private citizen when he sends an email to town officials? I just had a case last month where somebody on his letterhead complained and sent it to the supervisor, and he claimed, oh, it might be on my letterhead, but I sent that letterhead letter as a private citizen. I said, well, it doesn't look like it. And here, because you're an intra-town email to intra-town officials, to me it looks like it's employee speech, not private citizen speech. And if it is, there's no First Amendment protection at all. Your Honor, if he had only complained to the plant manager, Mike Roberts, or You're saying he complained above him, and therefore because he skips one step, what would have been employee speech is no longer employee speech. It's hard for me to buy that, that's all. Your Honor, I don't think that's what the Supreme Court said in Garcetti. If I may elaborate, Your Honor, he didn't just complain one step above. He also complained to the town attorney. Three steps ahead. He's still within the organization. He's still within the government entity. He never goes out of the government entity. It was outside his direct chain of command. It was outside his department. I don't think it matters. And I think that Garcetti and also Lane says you have to look at a practical aspect of it, that you have to look at all the circumstances, and nothing is quite dispositive, but I'll look at that language under Garcetti and Lane, but I don't think that your argument, if it's not in his written job description duties, then it is public speech. And I don't think that's what the Supreme Court's held. If Your Honor, please, if we take a look at the Handy Clay v. Memphis Sixth Circuit reported decision, that case says that where the plaintiff goes outside of his or her department to other officials in the town, outside of the department, here we've got the town attorney present, we've got the HR director. Also, Mayhew's email was immediately forwarded to the mayor and to a city council member, and so all these individuals had knowledge of what he was complaining about. The next day, Gill fires him. And so I'll take a look at those cases and see if the holdings bind me, because I think they are contrary to Supreme Court precedent, but if we have a holding on that issue, if you go out of your chain of command, it is no longer employee speech. I can tell you I haven't written those opinions, and I've written opinions that have kind of gone the other way. So I'll take a close look at all the opinions you've cited. I took up all your rebuttal time, but anything else you want to add? Judge Griffin, one other point is that some of these cases by the Sixth Circuit, I think Judge Rogers, in a dissenting opinion, in maybe the Steinbaugh case over a fire chief, had sort of condemned the employee for running to the mayor or the newspaper before trying to address it. The newspaper is different than the mayor. You're out of the organization. Trying to address it internally. In this case, Mr. Mayhew, the day they had this meeting on July 7th, the day they had the meeting with the town attorney, the HR director, the utilities director, and the manager of the town, he didn't get a chance to – he would have reported it further, but he was fired right then and there the day that he met with these five individuals. And so just thinking about – You have to establish you were fired for reporting as a private citizen, not as an employee. And on that – He was fired already before – you said he would have done it, but he's already gone. He was fired upon reporting these things to these five individuals. And, Your Honor, I wanted to cite a couple of pages of Gill's deposition. It's page 126, 160 through 62. That is where Mr. Gill testifies that he fired Mayhew, at least in part because of what he said in the July 1 email and what he said in the July 7 meeting. And, Your Honor, on the reverse in part or affirm in part, that would be acceptable and it would be an avenue. We could just go have a trial on the issue of whether the reports of nepotism and complaints about that motivated the discharges. Really, it's undisputed that they did, based on those deposition pages. I assume all this other evidence would just come in as the background material, even though it's not part of a claim at that point. I don't know if – unless it would be more prejudicial than probative. There might be a 403 issue there or something, but it seems hard how you would separate it out. It might be the subject of a motion to eliminate, Your Honor. Okay. Very good. Anything further? All right. Thank you, gentlemen. Thank you. The case will be submitted.